## Long v. Wilborn et al.

(Decided Oct. 17, 1933.)

E. BERTRAM and J. A. FLOWERS for appellant.

S. G. SMITH and J. G. SMITH for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

On February 12, 1931, J. W. Long, C. S. Long, W. D. Long, and L. M. Long, parties of the first part, ex-

ecuted and delivered to E. R. Wilborn and W. C. Wilborn, parties of the second part, a written lease by which the parties of the second part were given the right to remove coal from a certain mine in Clinton county for a period of five years. The parties of the second part agreed to make no room wider than 30 feet, "with a six foot strata on either side called stumps." As consideration for the lease the parties of the second part agreed to complete a grade and drain stone road between certain termini one mile in length, and as good as the road leading to Cartwright, Ky. They further agreed to pay first parties $100 on November 1, 1933, $100 on November 1, 1934, and $100 on January 1, 1935.

Alleging that they rented mining tools from the defendant J. W. Long for one year, and paid for their use for that period, and that after they had mined 1,350 bushels of coal according to the contract, the defendant J. W. Long wrongfully took said mining tools from plaintiffs on the —— day of July, 1931, and refused to allow plaintiffs to mine or remove any more coal from the mine, the lessees brought this suit to recover damages in the sum of $15,000 as profits which they would have realized had they been permitted to mine the coal. In addition to denying certain allegations of the petition the defendants interposed a counterclaim for $4,000 for damages done to the mine by plaintiffs. They further pleaded that the defendants C. S. Long, W. D. Long, and L. M. Long had no interest whatever in the subject-matter of the action. The jury found in favor of the defendants C. S. Long, W. D. Long, and L. M. Long, and awarded plaintiffs a verdict for $1,500, less $900 for road construction and use of mine, leaving a balance of $600. J. W. Long appeals.

The facts are these: Appellees did no work at the mines until some time in June, 1931. They then went on the premises and made some repairs on the old road from the highway to the mines, and cut the brush and bushes out of the proposed new road. After doing some work in the way of cleaning up the mines, they employed several different miners to remove the coal. These operations were continued from six to eight weeks, and during that time they mined 1,350 bushels. Before beginning operations they leased from J. W. Long a few tools worth $18 or $20. Although they had

paid the rent on the tools by delivering coal, J. W. Long took possession of the tools about August 1st. Mr. Long never told them not to work in the mine, and they never tried to get any new tools, nor did they ever talk to Mr. Long about the matter. However, E. R. Wilborn says that Long sent him word to quit digging coal. On the other hand, J. W. Long testified that he never told appellees, or any one else, that appellees should quit mining. He thought it was in September that he took the tools home. According to Jake Malone, a witness for appellant, he and Mr. Long got the tools a few days after Hobson Brown quit digging for appellees. According to appellant, he did not mine any coal that year, but according to Hobson Brown he did dig 400 or 500 bushels of coal that fall. Appellant admitted that he took possession of the mine after appellees quit.

Fairly analyzed the evidence presents the following situation: Appellees did not begin work in the mine until in June. They were not miners, and employed others to do the work. The work continued for six or eight weeks. The last of the miners quit between the first and fifteenth of August. A few days thereafter appellant took possession of the tools that were lying idle in the mine, and also took possession of the mine. Appellees were never told by appellant to quit digging, and no miner in their employ was ever denied admittance to the mine. It is true that appellee E. R. Wilborn testified that appellant sent him word to quit digging coal, but the name of the messenger or his authority to act was not shown. However, appellant testified that he never told appellees or any one else that appellee should quit mining. Although living near appellant, they never asked for the tools or sought to get other tools or made any effort to go on with the work. Indeed it was not shown that they even knew that the tools were gone. It was but natural that appellant should take possession of the tools and mine after appellees quit work. After appellees quit they never indicated in any way that they desired to go on with the work. On the contrary, they accepted the situation without protest, acquiesced in what had been done, and never even filed suit for damages until 10 or 11 months later. In the circumstances, the mere fact that appellant took possession of the tools and mine after appellees quit work was not sufficient to show a breach of the

·contract. It follows that the motion for a peremptory instruction should have been sustained.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.